An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

Nos. COA25-407, COA25-657

Filed 1 April 2026

Catawba County, No. 24SPC050411-170

IN THE MATTER OF:

C.A.

Appeal (COA 25-407) by respondent from order entered 29 August 2024 by Judge Wesley W. Barkley in Catawba County District Court. Heard in the Court of Appeals 14 October 2025.

Appeal (COA 25-657) by respondent from order entered 5 September 2024 by Judge Richard Holloway in Catawba County District Court. Heard in the Court of Appeals 15 January 2026.

> *Appellate Defender Glenn Gerding, by Assistant Appellate Defender David W. Andrews, for respondent-appellant.*

> *Attorney General Jeff Jackson, by Assistant Attorney General Amanda M. Whitt-Downs, for the State.*

> *Young, Morphis, Bach & Taylor, LLP by Associate Attorney Belinda Setzer for other-appellee Frye Regional Medical Center.*

DILLON, Chief Judge.

Respondent was involuntarily committed between July and September 2024 through a series of involuntary commitment orders, each committing her for either

seven or fourteen days. She separately appeals from two of those orders. We consolidate the appeals and address her arguments in this opinion.

## I. Background

On 14 July 2024, Respondent checked into an emergency room in Onslow County and informed the doctor she was being abused by her boyfriend. The doctor recorded that Respondent appeared to have "racing thoughts" and "pressured speech." Medical records also showed Respondent was pregnant and previously on anti-psychotic medication. Three days later, on 17 July 2024, the attending doctor filed a petition for involuntary commitment, which was ultimately granted.

The same day, Respondent was transported to Frye Medical Center. Upon arrival, Dr. Thomas McKean, the attending psychiatrist, evaluated Respondent and determined she should be committed for a period of time. Respondent was initially involuntarily committed by order entered the next day, 18 July 2024. She remained involuntarily committed into September 2024 through a series of orders.

Respondent appeals the order entered 29 August 2024 involuntarily committing her for a period of seven days. She separately appeals the order entered on 5 September 2024 involuntarily committing her for a period of 14 days.

## II. Analysis

Though the orders Respondent is appealing involve periods of involuntary commitment which have expired, her present appeals are not moot. *In re Hatley*, 291 N.C. 693, 695 (1977) (holding that a case of a past involuntary commitment is not

moot because the commitment "might likewise form the basis for a future commitment, along with other obvious collateral legal consequences").

A.     August Commitment Order Appeal (COA 25-407)

Respondent appeals the order entered 29 August 2024 involuntarily committing her for a period of seven days.

Our General Assembly has provided that a trial court may not involuntarily commit a respondent unless the court "find[s] by clear, cogent, and convincing evidence" two things, namely that she "is mentally ill" *and* is either "dangerous to [her]self" or "dangerous to others." N.C.G.S. § 122C-268(j).

In its August order, the trial court did expressly find that Respondent has a mental illness *and* is dangerous to herself. Respondent makes no argument on appeal regarding the trial court's ultimate finding regarding the mental illness prong. Rather, she contends the trial court did not make adequate written findings to support its ultimate finding that she was a danger to herself. Further, she argues there was not sufficient evidence from which the trial court could make this ultimate finding. Based on our Supreme Court's opinion in *In re C.G.*, 383 N.C. 224 (2022), we must agree and, therefore, must reverse the August order, as explained below.

In *C.G.*, the trial court's findings to support its ultimate findings were that the respondent if not committed, was at risk of not taking his medications, that he was a risk of "decompensation," and that he was unable to see to his dental and nourishment needs, as follows:

- 3 -

> has a mental illness, that being schizoaffective disorder and has a long-standing history of mental illness which goes back to his late teens, he is 33 years old now. Respondent suffers from hallucinations, disorganized thoughts, and is noncompliant with medications when not in the hospital. His active psychosis causes him to be a danger to himself and others. His ACT team initially had him committed as they were unable to see to his needs due to his decompensation. Respondent is unable to sufficiently take care of his needs, that being dental and nourishment needs. Respondent lives with a person who has anger issues and respondent has been the victim of assaultive behavior and disturbing thoughts which cause deterioration and leaves him unable to perceive dangers to himself.

*Id.* at 233 (internal brackets omitted). Notwithstanding the findings, five of the seven justices on our Supreme Court determined that these findings were not sufficient to show a nexus between the respondent's mental health and how the respondent would be a danger to himself. *Id.* at 240 ("After carefully reviewing the record, we hold that the trial court's written findings were insufficient to support its ultimate finding that respondent constituted a danger to himself."). In so holding, the Court held that the trial court must, not only make the required ultimate findings, but also must "record the facts upon which the ultimate findings are based." *Id.* at 240–41.

In its August order in the present matter, the only finding made by the trial court to support its ultimate finding Respondent was a danger to herself was that:

> Respondent continues to demonstrate significant lack of insight, and due to medication needing to reach therapeutic levels which takes longer in large part due to pregnancy.

The trial court's use of the word "continues" in its findings *may* warrant us considering the trial court's findings in a prior order. We note that in the order preceding the 29 August 2024 order, the trial court found Respondent "exhibit[ed] delusional behavior"; she had been "diagnosed with schizo-affective disorder, bi-polar type"; and it would take time for her medication to take effect due to her pregnancy.

We conclude these findings are not as robust as the findings made by the trial court in *C.G.* Thus, we must conclude the findings in the present case are inadequate.

However, we must reverse the trial court's August order, rather than vacate the order, as we must agree with Respondent, based on *In re C.G.*, that there was insufficient evidence offered to support the ultimate finding Respondent was a danger to herself. Specifically, we note that in *In re C.G.*, evidence was offered to show that the respondent could not care for his dental and nourishment needs and that he was at risk of decompensation. *Id.* at 230 (doctor testified that "if [the respondent] were to be discharged, . . . there would be an immediate decompensation"). However, the majority of justices held that the evidence was not sufficient to show that the respondent was at risk of harming himself based on his mental issues. *Id.* at 249 (holding our Court erred by concluding "the record evidence was sufficient to support a determination that respondent posed a danger to himself, and that respondent's involuntary commitment could be justified on that basis").

Here, though there was testimony at the August 2024 hearing about Respondent's mental health issues and risk of decompensation, the evidence was no

more robust than that offered in *In re C.G.* Therefore, as our Supreme Court ordered in *C.G.* regarding the involuntary commitment order it was reviewing, we must reverse the August order.

### B. September Commitment Order Appeal (COA 25-657)

Respondent makes similar arguments regarding the 5 September 2024 order, that the trial court's findings do not support its determination that she was a danger to herself and that the evidence, otherwise, would not support such findings.

In its September order, the trial court found as follows:

> The Respondent is a 28-year-old pregnant female diagnosed with schizo-affective bipolar type disorder. There is a Petition for Adjudication of Incompetency Pending in Catawba County[.] The Respondent will need the community supports in place in order to comply with the recommended outpatient treatment. If temporary shelter, with community support, can be identified within the next 7 days, the Respondent shall be discharged prior to the expiration of this Order. If an Interim Limited Guardian is appointed prior to the expiration of this Order, the Respondent shall be discharged to the Interim Guardians care, who will help facilitate outpatient care and follow up treatment.

Again, these findings are not as robust as the findings in *In re C.G.* to lay out exactly why Respondent would be a danger to herself if her involuntary commitment was not extended. Also, though the attending physician did state his opinion that Respondent was at risk of decompensation, he did not explain how Respondent would be a danger to herself if released from commitment. This testimony was similar to that rejected by our Supreme Court in *In re C.G.* Therefore, we must reverse the September order.

III.    Conclusion

With respect to both orders on appeal, based on our Supreme Court's holding in *In re C.G.*, we conclude the written findings by the trial court are insufficient to support the trial court's ultimate finding that Respondent posed a danger to herself. Also, based on *In re C.G.*, we conclude there was insufficient evidence offered at each hearing to support the trial court's ultimate finding that Respondent posed a danger to herself. Accordingly, we reverse both orders and remand for further proceedings (if deemed necessary), not inconsistent with this opinion.

REVERSED.

Judges FLOOD and MURRY concur.

Report per Rule 30(e).